

**Signed August 24, 2018.**

_____
**Ronald B. King
Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HJH CONSULTING GROUP, INC., | § | CASE NO. 18-50788-RBK |
| US TAX RECOVERY PARTNERS, LLC, AND | § | |
| B2B PROSPECTING, LLC, | § | |
| | § | |
| DEBTORS | § | CHAPTER 11 |
| | § | JOINTLY ADMINISTERED |

## OPINION

Before the Court is a Motion to Compel Production of a variety of documents held by a former executive of the chapter 11 debtors ("Debtors"). Debtors claim the former executive committed fraud against the company and breached his fiduciary duty; he is under criminal investigation for related allegations. This is not a case about determination of guilt or the specific contents of the documents requested. Instead, the issue before the Court is whether an individual under criminal investigation may properly invoke his Fifth Amendment privilege in a bankruptcy case by refusing to produce documents he believes may be self-incriminating.

The Court finds the Fifth Amendment protections to be extensive, the exceptions to be few, and the invocation here to be both proper and effective. Because the tax returns and W-2 forms fall under an exception to the document production arm of Fifth Amendment protection, the former executive may be compelled to produce them. The Court finds all other requested items to be protected under the Act of Production Doctrine. Accordingly, the Motion to Compel Production is denied except as to the documents found to be required records.

The Court finds that it has jurisdiction to render a final order in this core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to FED. R. BANKR. P. 7052 and FED. R. BANKR. P. 9014.

## BACKGROUND

Stephen Canty is a former executive of the Debtor entities (The HJH Consulting Group, Inc.; U.S. Tax Recovery Partners, LLC; and B2B Prospecting, LLC); he had significant involvement in and control over the Debtors' accounting functions before he was terminated. Debtors scheduled a claim of unknown value against Mr. Canty for breach of fiduciary duty and fraud, and allege that Mr. Canty manipulated Debtors' accounting records by overstating the amounts in (or existence of) certain accounts receivable. Mr. Canty denies the veracity of the accusations. Mr. Canty and other parties are under criminal investigation for related allegations, and he has retained criminal defense counsel.

Debtors' counsel noticed other parties of their intent to take a Rule 2004 examination of Mr. Canty. Counsel requested production of—and intended to pursue questions regarding—documents and communications detailed in forty-two expansively written paragraphs. On May 22, 2018, this Court held an expedited hearing regarding an Objection and Motion to Quash

the Rule 2004 examination. This Court granted the motion with respect to several lines of intended questioning but allowed questions regarding a limited selection of documents. Those included personal income tax returns; personal bank statements; franchise bank statements; texts and e-mails between Mr. Canty and Debtors' employees; copies of checks; any documents in Mr. Canty's possession relating to the Debtors; Mr. Canty's franchises' tax returns and bank statements; and an alleged written admission of guilt that Debtors' counsel maintained Mr. Canty had handed another individual and then taken back. (ECF No. 67).[1] Notably, this Court's order explicitly stated that it did not waive, limit, or impair Mr. Canty's claims to privilege or ability to assert his Fifth Amendment rights.

On June 13, 2018, Debtors' counsel conducted the limited Rule 2004 examination of Mr. Canty. Mr. Canty is an individual and not involved as a representative of a collective entity. Both criminal counsel and bankruptcy counsel for Mr. Canty were present at the examination. He asserted his Fifth Amendment privilege in response to almost every question, including requests for production of documents and written communications. Mr. Canty did respond openly to questions that were patently *not* incriminating, such as requests for his address. More than six weeks later, Debtors' counsel filed a Motion to Compel Production of Documents and request for attorney's fees in connection with the Rule 2004 examination and requested the hearing be expedited.

At the hearing, Debtors' counsel made several allegations regarding the Fifth Amendment privilege, including that Mr. Canty had generally and specifically waived his privilege by not appearing at the hearing on the Motion to Compel. Debtors' counsel also argued that Mr. Canty's

---

[1] Order Granting Objection and Motion to Quash Rule 2004 Examination, Case No. 18-51788-rbk.

3

invocation of the privilege violated the Court's order regarding the Motion to Quash, and asserted that Mr. Canty additionally waived the privilege as to any texts, e-mails, and other communications because those communications were two-party.

Mr. Canty's bankruptcy counsel argued both the bankruptcy and Fifth Amendment aspects of the opposition to the motion. He maintained that the Act of Production Doctrine protected Mr. Canty's refusal to provide the request documents, not because the contents were privileged, but because the production itself carried the potential to incriminate.

## DISCUSSION

Any court presiding over a civil proceeding that runs parallel to a criminal proceeding must handle motions to compel with tremendous care. Courts must take whatever pains necessary to avoid irreparably damaging a defendant's ability to receive a fair trial. An individual may invoke Fifth Amendment protections in a civil case when a party attempts to compel testimony that might incriminate—or lead to the incrimination of—the individual in a pending or impending criminal case. ***Lefkowitz v. Turley***, 414 U.S. 70, 77 (1973).

### I. Fifth Amendment Analysis

*A. Individuals May Invoke the Fifth Amendment in Response to Requests for Incriminating Testimony.*

Chief Justice John Marshall was the first to establish that information furnishing a link in the chain of incrimination is protected by the Fifth Amendment privilege. ***United States v. Burr***, 25 F. Cas. 38, 40 (C.C.D. Va. 1807). Chief Justice Marshall heard *Burr* with District Court Judge Cyrus Griffin in Virginia. Former Vice President Aaron Burr was charged with treason, and his secretary was called to testify regarding the writing of allegedly subversive letters. ***Id.*** at 38. The secretary asserted his Fifth Amendment privileges even in response to superficially innocuous

4

questions; the Court approved the approach under the theory that even early testimony on the subject furnished a link in the chain of incrimination. *Id.* at 40. That is, the witness may invoke the privilege when he or she believes the testimony provided may travel down the road of possible self-incrimination.

Fifth Amendment privileges are equally as valid in civil suits as in criminal cases. *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924) ("The privilege . . . applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it."). Likewise, individuals may plead the Fifth Amendment in bankruptcy proceedings. *In re Powers*, 261 F. App'x. 719, 722 (5th Cir. 2008); *Goldstein v. United States*, 11 F.2d 593, 594 (5th Cir. 1926); *In re DG Acquisition Corp.*, 208 B.R. 323, 332 (Bankr. S.D.N.Y. 1997), *aff'd*, 213 B.R. 883 (S.D.N.Y. 1997), *aff'd*, 151 F.3d 75 (2d Cir. 1998); *In re Hulon*, 92 B.R. 670, 673 (Bankr. N.D. Tex. 1988). Unlike in a criminal proceeding, invoking the Fifth Amendment in a civil case allows, but does not require, courts to draw an adverse inference. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Thus, the invocation in a civil—including bankruptcy—case does not come without a price: individuals must balance the benefit of protection from self-incrimination against the risk of negative inferences in the civil action.

When invoking the privilege against self-incrimination, the defendant must consider each question individually, not operate under a blanket assertion. *Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981). If the privilege is not challenged, the invocation stands. If the privilege is challenged, the court may rule on the issue immediately or the defendant may request an *in camera* examination where he or she may explain the privilege's applicability. *Sec. & Exch. Comm'n v. Farmer*, 560 F. App'x. 324, 327 (5th Cir. 2014). The defendant may wish to appeal on a sealed record should the invocation be overruled.

> *B. Parallel Criminal and Civil Proceedings Prompt Civil Courts to Take Extra Care Regarding Motions to Compel.*

Where civil and criminal proceedings run parallel and concern exists that discovery in the civil case might reveal inculpatory evidence, parties and courts must coordinate proceedings to maximize discovery without jeopardizing the rights of the defendant. Liberal civil discovery procedures are not to be used as a "back door" to access information beyond the reach of criminal discovery. ***In re Eisenberg***, 654 F.2d 1107, 1113 (5th Cir. 1981). Even if the investigating entity in the criminal trial is not a party in the civil trial, incriminating information in the civil proceeding may be passed along to a prosecutor, and testimony may be admissible in the criminal trial as an admission by a party-opponent. FED. R. EVID. 801(d)(2). Therefore, in some instances, discovery should be deferred, questions must be omitted, or the proceeding should be stayed. On balance, administrative policy gives more weight and deference to the criminal proceeding. ***Campbell v. Eastland***, 307 F.2d 478, 487 (5th Cir. 1962).

If criminal charges have not yet been filed, courts are often reluctant to grant a full stay unless there exist indicia that an indictment is inevitable, or unless special circumstances exist— including the extent of issue overlap in the cases, status of the cases, and private interests of the parties—that suggest a stay is necessary to avoid substantial and irreparable prejudice. ***United States v. Little Al***, 712 F.2d 133, 136 (5th Cir. 1983); ***United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.***, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008); ***Dominguez v. Hartford Fin. Servs. Grp., Inc.***, 530 F. Supp. 2d 902, 905 (S.D. Tex. 2008). Here, Mr. Canty is neither a debtor nor a creditor, so the entire bankruptcy proceeding need not be stayed to avoid prejudice to his criminal proceeding; instead, discovery as to his financial circumstances and his prior involvement with the Debtors will be strictly limited.

*C. The Act of Production Doctrine Extends Fifth Amendment Protection to Cover Select Documents in Addition to Oral Testimony, with Some Exceptions.*

Compelled document production has the potential to be precisely as incriminating as compelled oral testimony. *See* **Bellis v. United States**, 417 U.S. 85, 87 (1974) ("It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony."). Fifth Amendment protections are explicitly extended to protect individuals from being compelled to personally produce documents if the production itself would have testimonial aspects that could be self-incriminating. **Fisher v. United States**, 425 U.S. 391, 410 (1976). This ruling was developed further in **United States v. Hubbell**, 530 U.S. 27 (2000), where the Supreme Court held that the act of production itself may implicitly communicate statements of fact, such as the existence of documents, the defendant's possession and control of the documents, and the documents' authenticity. *Id.* at 36. This is referred to as the Act of Production Doctrine. **Farmer**, 560 F. App'x. at 326.

To qualify as protected, it is not necessary for the documents to be incriminating or for the information contained to be directly inculpatory. **Hubbell**, 530 U.S. at 38. It is essential, however, for the individual to believe (and be able to demonstrate *in camera*, if necessary) that there is a "real and substantial risk" that the information may tend to incriminate or lead to incrimination. *In re Sambrano Corp.*, 441 B.R. 562, 566 (Bankr. W.D. Tex. 2010).

Broad requests for production likewise do not save a subpoena or motion to compel; nets that are widely cast (e.g., "all bank records") are still often quashed to protect the defendant. **Hubbell**, 530 U.S. at 44–45; **United States v. Doe**, 465 U.S. 605, 607 n.3 (1984). To compel production or enforce the subpoena, a party must demonstrate that the desired documents fall into

7

an exception to the Act of Production Doctrine. The primary exceptions are the Foregone Conclusion Doctrine and the Required Records Doctrine.

      i.      The Foregone Conclusion Doctrine

While the personal production of documents often has a testimonial aspect through the verification of possession, existence, and authenticity, the Fifth Amendment privilege does *not* apply where the existence and location of particular documents is a "foregone conclusion." ***Fisher***, 425 U.S. at 411. When those testimonial elements are absent—control and authenticity are not at issue—the matter is not one of testimony, but merely of surrender. ***Id.*** For example, where the IRS knows an accountant prepared documents and delivered them, but is not requesting that the taxpayer authenticate or verify them, the risk of self-incrimination is almost nonexistent, absent additional facts. The existence was already known, and the authenticity is verified through the accountant who created the document instead of through the taxpayer defendant. *See* ***Hubbell***, 530 U.S. at 44–45 (discussing *Fisher*).

The burden in the Foregone Conclusion Doctrine is on the party moving to compel; there is an evidentiary predicate to be laid. The moving party must demonstrate the document's existence and possession are, indeed, foregone conclusions not requiring any declaration of control, authenticity, or actuality. To do so, the moving party must establish its prior awareness and bears the burdens of production and proof on the questions of possession and existence of the documents. ***In re Sambrano Corp.***, 441 B.R. 562, 570 (Bankr. W.D. Tex. 2010) (citing ***In re Grand Jury Subpoena***, 383 F.3d 905, 910 (9th Cir. 2004)). No such foundation is built in this case; the Foregone Conclusion Doctrine does not apply.

ii. The Required Records Doctrine

The Required Records Doctrine developed in ***Shapiro v. United States***, 335 U.S. 1 (1948), and the Supreme Court has since crystallized three conditions that exempt such a record from Fifth Amendment protection:

> [F]irst, the purposes of the United States' inquiry must be *essentially regulatory*; second, information is to be obtained by requiring the preservation of records of a kind which the regulated party has *customarily kept*; and third, the records themselves must have assumed "*public aspects*" which render them at least analogous to public documents.

***Grosso v. United States***, 390 U.S. 62, 67–68 (1968) (emphasis added). At least four circuits, including the Fifth, have concluded the Required Records Doctrine mandates production of foreign bank account records defendants were required to keep under Treasury Department regulations governing offshore banking. ***United States v. Chabot***, 793 F.3d 338, 349 (3d Cir. 2015); ***In re Grand Jury Subpoena***, 696 F.3d 428, 436 (5th Cir. 2012); ***In re Special Feb. 2011–1 Grand Jury Subpoena Dated Sept. 12, 2011***, 691 F.3d 903, 909 (7th Cir. 2012); ***In re M.H.***, 648 F.3d 1067, 1079 (9th Cir. 2011). It follows, of course, that records *not* required by law to be kept or disclosed to a public agency are protected. ***Doe***, 465 U.S. at 607 n.3.

*Doe*, particularly relevant to the present inquiry, involved five subpoenas served on the owner of a sole proprietorship. *Id.* at 606. The subpoenas demanded production of: (1) years of telephone records of defendant's companies; (2) years of bank records pertaining to several of defendant's accounts; (3) virtually all business records of the prior four years, including general ledgers, bills, invoices, receipts, canceled checks, tax returns, purchases, payroll, financial statements, and accounts receivable ledgers; (4) all company correspondence, bids, bonds, and company contracts; and (5) offshore bank account information, including all bank statements and canceled checks. *Id.* at 606–07. The defendant moved to quash, and the district court granted the

motion except with respect to those documents and records required by law to be kept or disclosed to a public agency. *Id.* at 607. The district court specifically identified tax returns and W-2 statements as examples of such documents, and the defendant did not challenge that identification. *Id.* at 607 n.3. Therefore, the Supreme Court limited its holding only to documents and records that regulatory law did not require an individual to keep or disclose. *Id.* While the Supreme Court found that the contents of the quashed documents were not privileged, it agreed with the district court that the act of their production was protected by the Fifth Amendment, and it would therefore be improper to compel production of any documents that did not fall under the required records exception.

Importantly, neither the Required Records Doctrine nor the Foregone Conclusion Doctrine should be read as excepting business records that proprietors might be generally assumed to keep. The Supreme Court made clear in *Hubbell* that where there is no prior knowledge of the existence or whereabouts of documents, a compelling party cannot argue that "a businessman such as respondent will always possess general business and tax records that fall within the broad categories described in this subpoena." *Hubbell*, 530 U.S. at 45. The documents must be either previously known about and have no issue of authenticity (Foregone Conclusion), or required by law to be kept or disclosed to a public agency (Required Records).

The defendant in *Doe* was not required to produce his communications, bank records, ledgers, and so forth, but was instead only ordered to produce his required records, including tax returns. This situation mirrors this case, both in the breadth of the documents requested and the argument regarding content privilege as compared to production privilege. This Court's ruling today also mirrors the *Doe* ruling: arguably, not all of the requested documents have privileged contents, but the vast majority are not required records and their production possesses a testimonial

aspect. This Court concludes, however, that Mr. Canty's recent tax records and W-2 forms are properly identified as required records; he may be compelled to produce strictly those materials.

**II. Application**

Mr. Canty invoked his Fifth Amendment privilege to protect against self-incriminating testimony—orally or through production—regarding, among other things, records and communications related to his pending criminal investigation. During his Rule 2004 examination he plainly did not make a blanket assertion of privilege, as he willingly answered basic questions regarding his name and address. Mr. Canty's invocation of his privilege regarding both testimony and documents is proper, but he may be compelled to produce a select few documents under the Required Records Doctrine.

*A. Waiver*

Debtors' argument that Mr. Canty waived the privilege by not appearing—apparently to re-invoke the Fifth Amendment—at the hearing on the Motion to Compel is not well taken. Mr. Canty invoked his privilege clearly and concisely at the Rule 2004 examination, by Debtors' own admission and to Debtors' unambiguous displeasure. There was no requirement for Mr. Canty to again appear to affirm his intent to invoke his right against self-incrimination with respect to precisely the same documents. Indeed, the Supreme Court for more than a century has admonished courts to "indulge every reasonable presumption against waiver of fundamental constitutional rights." ***Emspak v. United States***, 349 U.S. 190, 198 (1955) (discussing the Fifth Amendment privilege); ***Hodges v. Easton***, 106 U.S. 408, 412 (1882) (establishing this principle for all fundamental rights). Mr. Canty made no waiver, specifically or generally.

11

### B. *Order Violation*

Debtors argue that Mr. Canty violated the Court's order regarding the Motion to Quash—in which the Court detailed the documents about which counsel may inquire at the Rule 2004 examination—by refusing to produce documents enumerated in the order. The order quashes several requests for documents and limits the breadth of other requests. The order makes clear that nothing in it is "is intended to waive, limit or otherwise impair any of Canty's claims to privilege or to assert his rights under the Fifth Amendment to the Constitution." (ECF No. 67). Mr. Canty in no way violated this Court's order by refusing to produce potentially self-incriminating documents.

### C. *Testimonial Aspects and Privilege*

Debtors quoted selectively from *Fisher* to support the proposition that there is no Fifth Amendment privilege for document production, but Debtors mistake the holding of the case. The Supreme Court in *Fisher* reinforced the Act of Production Doctrine, but the defendant did not benefit from the protection, as his situation did not involve testimony. The subpoena in question was not for the taxpayer's own documents and did not require production of his records. The Court concluded the Fifth Amendment did not shield a taxpayer from producing accountant's records in the possession of a third party. Because production of such records would express only that the taxpayer believed the documents to be the same as those described in the subpoena, not that the taxpayer believed the papers were accurate or properly authenticated, there was no threat of incrimination. ***Fisher***, 425 U.S. at 413–14. Mr. Canty's case is notably different in that the production requests are for private documents and communications in his possession.

Debtors additionally maintain that the contents of documents and communications are not privileged or confidential; therefore, the materials are unprotected by the Fifth Amendment.

12

Broadly, this position erroneously conflates the standards for attorney-client privilege or work product with the standard for Fifth Amendment document protection. The Act of Production Doctrine specifies that production itself is the testimonial—and therefore protected—aspect; it is not required that the contents of the document be privileged. *Doe*, 465 U.S. at 617; *Fisher*, 425 U.S. at 410.

This Court found it unnecessary to conduct an *in camera* review of the documents Mr. Canty sought to protect; the potential testimonial aspects are plain. Debtors requested a host of communications—many with Debtors' own employees, presumably more willing sources for the communications in question—and financial documents from a former executive under criminal investigation for allegations related to financial activities involving the Debtors. The Court need not engage in mental gymnastics or examine each document in detail to find that Mr. Canty's belief in the real and substantial risk of incriminating testimony is reasonable.

*D. Exceptions*

The Supreme Court in *Doe* offered tax returns and W-2 forms as examples of required records that would fall outside a proper motion to quash. *Doe*, 465 U.S. at 607 n.3. This Court agrees and applies that identification here. Of the requested documents that survived the Motion to Quash, two items fall in part under the Required Records Doctrine. One requests personal income tax returns from the last seven years; the other broadly requests all tax returns and legal and financial documents related to the Canty franchises (including e-mails and bank account information). The former will be reduced to tax returns from the last four years; the latter must be strictly limited to the tax returns and W-2 forms related to Mr. Canty's franchises. All other requests to compel production are unequivocally denied.

## CONCLUSION

The Fifth Amendment protects against compelled testimony that may be self-incriminating. The privilege extends to instances where document production may have a testimonial nature, with some exceptions. These exceptions include Required Records such as tax returns, Foregone Conclusions where the document's existence and possession are not in question and the defendant is not asked to authenticate or verify the document, and circumstances where the possible testimony has been deemed not to be self-incriminating after an *in camera* review. Where parallel civil and criminal proceedings exist, courts must tread exceptionally lightly when considering motions to compel, so as not to trample the constitutional rights of defendants and jeopardize the integrity of the criminal investigation.

Debtors' attempts to compel Mr. Canty to produce potentially self-incriminating documents run counter to the Fifth Amendment. Mr. Canty properly invoked his privilege, but may be compelled to produce documents that fall into exceptions to the Act of Production Doctrine. Those documents are few. Mr. Canty may not be compelled to produce his communications, bank account balances and information, or alleged written admissions of guilt (perhaps the starkest example of the testimonial nature document production can display and plainly not a document Mr. Canty may be compelled to produce, regardless of whether it exists). Mr. Canty may be compelled to produce recent tax records and W-2 forms.

For the foregoing reasons, the Motion to Compel Production is denied in part and granted in part. Mr. Canty is only ordered to produce his personal income tax returns, franchise tax returns, and W-2 forms from the last four years; in all other respects the Motion is denied. A separate order will be entered.

# # #